IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 13, 2002 Session

## DELBERT LEE HARRIS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Dickson County**
**No. CR-5091     Robert E. Burch, Judge**

---

**No. M2002-00777-CCA-R3-PC - Filed March 19, 2003**

---

The petitioner, Delbert Lee Harris, was convicted in the Dickson County Circuit Court of aggravated assault, rape, rape of a child, and attempted sexual battery. The petitioner was ultimately sentenced to an effective sentence of thirty-two years incarceration in the Tennessee Department of Correction. Subsequently, the petitioner filed a petition for post-conviction relief, complaining that he received the ineffective assistance of counsel and that several errors occurred during trial. The post-conviction court partially granted the petition and dismissed the remainder of the petitioner's issues. The petitioner and the State timely appealed. Upon review of the record and the parties' briefs, the judgment of the post-conviction court is affirmed in all respects except for the dismissal of the rape conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in Part, Reversed in Part, and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Douglas A. Trant, Knoxville, Tennessee, for the appellant/cross-appellee, Delbert Lee Harris.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General; and Kim G. Menke, Assistant District Attorney General, for the appellee/cross-appellant, State of Tennessee.

### OPINION

### I.  Factual Background

The petitioner was charged by presentment on a four count indictment. Count one charged the petitioner with the aggravated assault of his then wife, Diane Harris; count two charged

the petitioner with rape of a child, his stepdaughter, LP,[1] on September 12, 1995; count three charged the petitioner with rape of a child, LP, in May 1995; and count four charged the petitioner with the attempted aggravated sexual battery of LP on September 17, 1995. This court has previously detailed the facts adduced at trial:

> In the summer of 1995, the [petitioner] and his wife, Diane, had been married for ten years. Their union resulted in the birth of two children. Mrs. Harris had three children by a prior marriage, including the thirteen-year-old victim. On September 17, 1995, at approximately 3:40 a.m., the [petitioner] woke the victim, directed her to an upstairs playroom, and began to remove her shorts. Mrs. Harris awakened in time to see the [petitioner] leading the victim up the stairs. As the victim's clothes were being removed, Mrs. Harris overheard the child's cries and intervened. She "grabbed" her daughter and called 911, reporting that her child had been molested and that the [petitioner] had "taken possession of a gun." Mrs. Harris woke her seven-year-old daughter and was preparing to leave the home with her two children. The [petitioner] threatened to commit suicide and then threatened his wife. The [petitioner] told his wife, "You f----- up now," then pointed the gun at her chest. As he pulled the trigger, the bullet jammed. The [petitioner] then went upstairs to get a second gun. When the [petitioner] left the room, Mrs. Harris and her two daughters left the house and hid behind a playhouse in the front yard until the police arrived.
>
> Worried about her sons who were still in the house, Mrs. Harris looked through the outside window to their bedroom. The boys were still asleep. When Mrs. Harris saw the [petitioner] enter the bedroom, she ran to the rear of the house to hide. Armed with a rifle, the [petitioner] walked out of the residence calling for Mrs. Harris and her daughters, promising that he would not harm them and that he just wanted to talk. The [petitioner] fled to Maryland, but eventually returned to Tennessee when he learned of the criminal warrants against him.
>
> The victim later told law enforcement officers that the [petitioner] had touched her private parts and had done so before. Upon examination by a doctor, the victim reported that the [petitioner] had forced her to engage in sexual intercourse in May of 1995. She also admitted to a second rape on September 12, 1995.

---

[1] This court refers to minor victims of sexual crimes only by their initials.

State v. Delbert Lee Harris, No. M1999-01239-CCA-R3-CD, 2000 WL 804669, at **1-2 (Tenn. Crim. App. at Nashville, June 23, 2000) (citing State v. Delbert Lee Harris, No. 01C01-9705-CC-00177, 1998 WL 670403, at **1-2 (Tenn. Crim. App. at Nashville, Sept. 30, 1998)).

During trial, the evidence revealed that LP turned thirteen before the commission of the offenses alleged in counts two and four; accordingly, the trial court allowed the State to proceed on the lesser offenses of rape on count two and attempted sexual battery on count four. The petitioner was convicted of aggravated assault, rape, rape of a child, and attempted sexual battery. The trial court sentenced the petitioner to a total effective sentence of thirty-two years incarceration. On appeal, this court affirmed his convictions, but remanded to the trial court for a new sentencing hearing because the trial court did not consider that the petitioner would be required to serve one hundred percent (100%) of his sentence for rape of a child. See Harris, No. 01C01-9705-CC-00177, 1998 WL 670403, at *8. At the new sentencing hearing, the trial court again sentenced the petitioner to an effective thirty-two year sentence, which sentence this court affirmed on appeal. See Harris, No. M1999-01239-CCA-R3-CD, 2000 WL 804669, at *4.

Subsequently, the petitioner timely filed a petition for post-conviction relief. The post-conviction court granted relief regarding the petitioner's rape conviction but dismissed the remainder of the petition. On appeal, the petitioner raised the following issues for our review: (1) whether the petitioner was denied due process of law because jurors who knew the petitioner was incarcerated at the time of trial were not removed from the jury panel; (2) whether trial counsel was ineffective for failing to object and ask for a mistrial because the jurors saw the petitioner incarcerated; (3) whether the trial court improperly amended the indictment on count four to charge the petitioner with attempted aggravated sexual battery; (4) whether trial and appellate counsel was ineffective for not raising the issue of the improper amendment of the indictment; (5) whether the trial court erred in allowing the testimony of Dr. Bridges and Deputy Heflin under the hearsay exception of fresh complaint; (6) whether trial counsel was ineffective for not objecting to the fresh complaint testimony of Dr. Bridges and Deputy Heflin; (7) whether the State committed prosecutorial misconduct in eliciting an inflammatory statement from Diane Harris; and (8) whether trial counsel was ineffective in failing to object to the inflammatory statement. The State cross-appealed, arguing that the post-conviction court incorrectly dismissed the petitioner's conviction for rape.

At the post-conviction hearing, the petitioner entered into evidence the transcript of his original trial. Additionally, the petitioner testified on his own behalf. The petitioner contended that during his trial, two jurors saw him either shackled or in police custody on his way to and from court. He informed trial counsel of the problem, and trial counsel subsequently informed the trial court. A juror was thereby removed from the panel; however, at the post-conviction hearing, the petitioner alleged that the wrong juror was removed. The petitioner stated that he informed trial counsel that the trial court had removed the wrong juror. The petitioner explained that he did not inform the trial court of the error because he believed he had to speak to the court through trial counsel.

The petitioner also testified that his trial counsel never discussed with him the concept of "fresh complaint." Additionally, the petitioner complained that at trial his ex-wife, Diane Harris, testified without objection that the petitioner "took a twelve-year-old (12) girl and took something from her she could never get back."

The petitioner's trial and appellate counsel testified at the post-conviction hearing that he provided the petitioner with copies of all discovery materials and copies of motions filed.[2] Trial counsel also contacted two character witnesses recommended by the petitioner, but those witnesses were not helpful to the defense. Trial counsel maintained that the petitioner decided to testify against the advice of counsel and that the petitioner was a poor witness. In conclusion, trial counsel stated that he knew of nothing he could have done to change the outcome of the trial.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578; see also Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

### A. Jurors

The petitioner first complains that he was denied due process because two jurors were allowed to see him "shackled and in police custody in a police car" while he was being transported to and from court. Ordinarily, a defendant should not be forced to wear shackles or prison garb in front of members of the jury. See State v. Bradfield, 973 S.W.2d 937, 945 (Tenn. Crim. App. 1997). However, should such a restrained appearance be made, a trial court may cure the error by instructing the jury that the shackles should not affect the jury's determination of guilt. See Willocks v. State, 546 S.W.2d 819, 822 (Tenn. Crim. App. 1976).

Initially, we note that the petitioner could have raised this issue on direct appeal. He failed to do so, thereby waiving the issue. See Tenn. Code Ann. § 40-30-206(g) (1997); Forrest v. State, 535 S.W.2d 166, 167 (Tenn. Crim. App. 1976). Nevertheless, because the petitioner has also raised an issue of the ineffective assistance of counsel regarding this issue, we will address the petitioner's concerns. See Royce Lee "Dino" Lane v. State, No. 02C01-9604-CC-00133, 1998 WL 756746, at *6 (Tenn. Crim. App. at Jackson, Oct. 30, 1998).

---

[2] The petitioner was represented by the same attorney at trial and on appeal.

The trial transcript reveals that trial counsel informed the court that "two of the jurors saw the [petitioner] being led to and from the courtroom in shackles." The bailiff advised the trial court that he saw the first contested juror "come across the road" toward the bank while the petitioner was in the police car. The bailiff did not know if the juror saw the petitioner, but stated that the juror did not "look our way." The second contested juror reportedly saw the petitioner arrive at court in the back of the police car. After much debate, trial counsel decided not to question the first contested juror. He explained to the trial court that if that juror had not seen the petitioner, "I'm hesitant to question the juror to plant the seed in her mind." Regarding the second contested juror, the consensus between the State, the defense, and the trial court was to remove that juror from the panel and utilize the alternate juror. The trial court cautioned the petitioner and trial counsel to make sure the correct juror was being excused because "[i]t would be terrible if that juror stood up and I excused her and she walked down and then [the petitioner] said that's not the one." After the second contested juror was excused from the panel, the trial court asked her if she had seen the petitioner shackled and in the police car. The juror asserted that she had not.

> At the post-conviction hearing, the petitioner specifically claimed:
> When I was coming to court and got out of the police car, there was a juror in a brown van next to the police car that I got out of. And that juror saw me. And leaving court one day, there was a juror walking towards the bank and she also looked over and saw me in – in the squad car.

The petitioner testified that he informed trial counsel that he had been seen by two jurors while in a police car. The petitioner acknowledged that trial counsel brought the issue to the trial court's attention, but the petitioner alleged that the wrong juror was removed. The petitioner claimed that he informed trial counsel that the wrong juror had been removed, but he did not inform the trial court because he believed that he could only speak to the court through his attorney. Neither the petitioner nor the State questioned trial counsel at the post-conviction hearing regarding these allegations. The petitioner did not call either juror to testify regarding this issue.

Based upon this proof, we conclude that the petitioner has not established by clear and convincing evidence that his due process rights were violated. The trial court exercised extreme care to ensure that the proper juror was removed. The court gave the petitioner and trial counsel ample opportunity to confirm the identity of the juror. Moreover, as noted, the petitioner did not call either contested juror to testify at the post-conviction hearing regarding witnessing the petitioner in shackles or in a police car. This issue is without merit.

The petitioner also argues that trial counsel was ineffective for failing to pursue this issue. However, the petitioner does not cite to any authority or make any argument in support of this issue. Thus, this issue is waived. See Tenn. R. App. P. 27(a)(7). Regardless, we note that trial counsel specifically told the trial court that he did not wish to question the first contested juror for fear of "planting a seed" in her mind regarding the petitioner. We will not second guess trial counsel's tactical or strategic decision. See Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

Moreover, as we earlier noted, the petitioner did not establish any prejudice he suffered as a result of the jurors remaining on the jury. This issue is likewise without merit.

### B. Amended Indictment

Again, the petitioner was originally indicted on count two of rape of a child and on count four of attempted aggravated sexual battery of a victim less than thirteen years of age. At trial, the proof revealed that the victim, LP, was thirteen on the dates of these offenses. Thus, an essential element of both offenses, namely that the victim was under thirteen, could not be proven by the State. The State conceded that it had not proven rape of a child or attempted aggravated sexual battery in its case-in-chief; however, the State argued that it had established the lesser-included offenses of rape and attempted sexual battery, respectively. The trial court allowed the State to go forward on count two on a charge of rape and on count four on a charge of attempted sexual battery. The petitioner was convicted of both offenses.

In support of his post-conviction claim, the petitioner argued that the trial court incorrectly amended both indictments, implicitly arguing that rape is not a lesser-included offense of rape of a child and attempted sexual battery is not a lesser-included offense of attempted aggravated sexual battery of a victim less than thirteen years of age. The post-conviction court ruled that the petitioner's conviction for rape should be dismissed, but affirmed the petitioner's conviction for attempted sexual battery. Specifically, the post-conviction court stated:

> It is highly repugnant to this Court to acquit a convicted rapist on a "legal technicality" especially when the law at the time of the trial was followed exactly. A trial court cannot be expected to make rulings based upon what the law may become at some time in the future. This unfortunate result is especially unfair to the victim of this rape, but a trial judge is required to follow the law, no matter how repugnant the result. This Court can only hope that it is in error in its understanding of the law as it applies to this case and invites the appellate courts [of] this state to carefully scrutinize this ruling of the trial court and, hopefully, reverse the same and reinstate the conviction.

On appeal, the petitioner complains that the post-conviction court erred in failing to also dismiss his attempted sexual battery conviction. The State cross-appealed arguing that the post-conviction court erred in dismissing the petitioner's rape conviction.

We note that, "because an indictment for an offense encompasses, by implication, all lesser included offenses," the State had no need to "amend" the indictment if rape was a lesser-included offense of rape of a child and if attempted sexual battery was a lesser-included offense of attempted aggravated sexual battery. See State v. Elizabeth Davis, No. E1999-00373-CCA-R3-CD, 2000 WL 1349263, at *7 (Tenn. Crim. App. at Knoxville, Sept. 19, 2000). Moreover, the record does not reflect that the State moved to amend the indictment, nor did the trial court amend the indictment. See State v. Stokes, 24 S.W.3d 303, 306 (Tenn. 2000). Thus, this issue turns upon

whether the trial court correctly assessed the lesser offenses of rape of a child and attempted aggravated sexual battery.

On November 8, 1999, our supreme court filed State v. Burns, 6 S.W.3d 453 (Tenn. 1999), outlining the test currently used by Tennessee courts to determine lesser-included offenses. Burns overruled State v. Trusty, 919 S.W.2d 305 (Tenn. 1996), which previously set forth the standard for determining lesser-included offenses. In this post-conviction appeal, the petitioner argued that the Burns standard should have been applied retroactively in determining the lesser-included offenses for counts two and four; contrastingly, the State contended that the Trusty standard was applicable to the petitioner's case.

The petitioner's trial was concluded on October 1, 1996. As noted, the petitioner appealed his convictions to this court. On September 30, 1998, this court affirmed the petitioner's convictions, but remanded to the trial court for resentencing. The supreme court denied permission to appeal on March 29, 1999, prior to the filing of Burns. "[O]ur [c]ourts have only applied Burns, retroactively, to cases which were in the appellate pipeline and pending at the time the decision in Burns was announced." James Richard Bishop v. State, No. E2000-01725-CCA-R3-PC, 2001 WL 798065, at *8 (Tenn. Crim. App. at Knoxville, July 13, 2001). Although the petitioner subsequently appealed the trial court's resentencing, we do not conclude that this kept the petitioner's case alive for retroactive application of Burns. See Anthony Hodges v. State, No. M2001-03068- CCA-R3-PC, 2002 WL 31730872, at *4 (Tenn. Crim. App. at Nashville, Dec. 4, 2002) (stating that Burns has not been given retroactive application in post-conviction cases where the direct appeal was concluded prior to Burns), application for perm. to appeal filed, (Jan. 31, 2003); see also State v. Clifford Coleman, Sr., No. M2000-01916-CCA-R3-CD, 2002 WL 125694, at *7 (Tenn. Crim. App. at Nashville, Jan. 31, 2002) (explaining that "[a] case is within the appellate pipeline when it is pending at the time of the decision and fairly raises the issue"), perm. to appeal denied, (Tenn. 2002). Accordingly, we agree with the State that in the instant case, Trusty is the applicable standard and Burns does not apply retroactively to the petitioner's case.

Trusty provided that "two types of lesser offenses . . . may be included in the offense charged in an indictment and, may, therefore, form the basis for a conviction: a lesser grade or class of the charged offense and a lesser included offense." 919 S.W.2d at 310. "Generally, an offense qualifie[d] as a lesser included offense only if the elements of the included offense [were] a subset of the elements of the charged offense and only if the greater offense [could not] be committed without also committing the lesser offense." Id. Thus, if an offense required proof of any element not included in the charged offense, it was not considered a lesser-included offense. Id. at 311. "A lesser grade or class offense was defined by whether it was located in the same statutory chapter and part of the Code as the greater offense." State v. Ely, 48 S.W.3d 710, 718 (Tenn. 2001), cert. denied, 534 U.S. 979, 122 S. Ct. 408 (2001).

### 1. Rape of a Child

On count two, the charged offense was rape of a child. Tennessee Code Annotated section 39-13-522(a) (1995) defined rape of a child as "the unlawful sexual penetration of a victim

by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Rape of a child was a Class A felony. Id. at (b). Tennessee Code Annotated section 39-13-503 (1995) provided:

> (a) Rape is unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances:
>
> (1) Force or coercion is used to accomplish the act.[3]

See also Harris, No. 01C01-9705-CC-00177, 1998 WL 670403, at *3 (indicating that the petitioner was convicted of rape by the use of force or coercion). Clearly, rape required an element, i.e. coercion, that rape of a child did not require. Accordingly, rape was not a lesser-included offense of rape of a child. However, we must now decide if rape was a lesser *grade* of offense.

Trusty explained that "the grades or classes of any offense are established by statute. . . [therefore,] [o]ne need only look to the statutes to determine whether a given offense is a lesser *grade or class* of the crime charged." 919 S.W.2d at 310. Nevertheless, this court soon observed that "sex crimes do not lend themselves to such simple categorization." State v. Ealey, 959 S.W.2d 605, 611 (Tenn. Crim. App. 1997). Ealey distinguished sexual assault crimes from other types of sex crimes, "includ[ing] within the term 'sexual assault crimes' the crimes of aggravated rape, rape, aggravated sexual battery, sexual battery, and rape of a child." Id. at 611 n.5. Therefore, we conclude that rape was a lesser grade offense of the charged offense of rape of a child. Thus, the trial court correctly allowed the jury to proceed to determine the petitioner's guilt on the charge of rape.

### 2. Attempted Aggravated Sexual Battery

On count four, the petitioner was originally indicted for the attempted aggravated sexual battery of LP. Attempt was defined in Tennessee Code Annotated section 39-12-101(a) (1995). As indicted,

> [a]ggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
>
> . . . .
>
> (4) The victim is less than thirteen (13) years of age.

Tenn. Code Ann. § 39-13-504(a)(4) (1995). Aggravated sexual battery was a Class B felony; ergo, attempted aggravated sexual battery was a Class C felony. Id. at (b); see also Tenn. Code Ann. § 39-12-107(a) (1995) (stating that, generally, attempt is one classification lower than the most serious crime attempted). Sexual battery, a Class E felony, "is unlawful sexual contact with a victim by the defendant . . . accompanied by . . . [f]orce or coercion." Tenn. Code Ann. § 39-13-505(a)(1) and (b) (1995); see also Harris, No. 01C01-9705-CC-00177, 1998 WL 670403, at *4. Attempted sexual battery was a Class A misdemeanor. See Tenn. Code Ann. § 39-12-107(a). Once again, we observe that, *as charged*, sexual battery required the use of force or coercion, an element that was not required by the charged offense of aggravated sexual battery. Thus, in the instant case, attempted

---

[3] Rape was a Class B felony. Tenn. Code Ann. § 39-13-503(b).

sexual battery was not a lesser-included offense of attempted aggravated sexual battery. However, as with rape and rape of a child, both aggravated sexual battery and sexual battery were "sexual assault crimes"; thereby, attempted sexual battery was a lesser grade of attempted aggravated sexual battery.

Accordingly, we conclude that although the post-conviction court incorrectly applied the Burns analysis to dismiss the petitioner's rape conviction, the post-conviction court did not err in affirming the petitioner's conviction for attempted sexual battery.

Furthermore, the petitioner summarily argues that "trial and appellate counsel was ineffective for not raising the issue." As we have concluded, the trial court did not err in allowing the jury to be instructed on the lesser offenses of rape and attempted sexual battery. The trial court followed the law as it existed at the time of the petitioner's trial. Counsel was not deficient in his performance.

As an aside, in his reply brief, the petitioner argued that the State's brief should be dismissed as untimely. While we recognize that the State did not file its brief within thirty days after the petitioner filed his appellate brief, see Tenn. R. App. P. 29(a), the petitioner did not properly file a motion to have the appeal considered on the petitioner's brief alone. See Tenn. R. App. P. 29(c); see also Tenn. R. App. P. 22. Nevertheless, even if the petitioner had properly filed the correct motion, the requirements of Rule 29(a) may be suspended in order to dispose of this concern in the most expeditious manner possible. See State v. Reeves, 610 S.W.2d 730, 731 (Tenn. Crim. App. 1980); Tenn. R. App. P. 2.

### C. Testimony

Next, the petitioner contends that

[t]he court committed error and trial counsel was ineffective for not objecting to the alleged fresh complaint in the testimony by Dr. Bridges. The Court also erred in admitting the testimony without objection constituting ineffective assistance of counsel of Deputy Heflin.[4]

First, we note that these issues should have been raised on direct appeal; therefore, the petitioner's arguments are waived. See Tenn. Code Ann. § 40-30-206(g) and -210(f) (1997). Moreover, we note that the petitioner failed to properly outline in his brief the objectionable statements. Further, at the post-conviction hearing, the petitioner failed to state his specific objections and also failed to directly

---

[4] The petitioner's one paragraph argument in his appellate brief does not specify which testimony by Dr. Bridges or Deputy Heflin aggrieved him. We have reviewed the entire record in an attempt to discern the offensive testimony.

question trial and appellate counsel regarding these complaints.[5]  Nevertheless, based upon our understanding of the petitioner's grievances, we will briefly examine these issues.

The petitioner appears to argue that counsel was ineffective for failing to object to the testimony of Dr. Bridges that, when LP came to the emergency room for treatment on September 17, 1995, she was "very upset . . . anxious.  She was very concerned about what was going to happen to her.  She was also depressed in a [sense] that she didn't want to talk about it."  Dr. Bridges read from his treatment notes that "[t]hirteen year old white female admits to have been forced to have sex with stepfather since early summer of May of 1995."  Trial counsel objected to this testimony and the trial court called for a jury-out hearing.  During the hearing, the trial court cautioned the State and Dr. Bridges to not reveal the continuous nature of the sexual abuse.  When the jury returned, Dr. Bridges testified that LP had revealed that, on September 17, the petitioner woke her, forced her upstairs, and removed her clothes.  The petitioner complains that this court noted the contested testimony on direct appeal, demonstrating prejudice.  He also alleges that trial counsel was ineffective in failing to request a curative instruction.

> The post-conviction court stated:
> The Court interprets [the failure to request a curative instruction] as a tactical decision by trial counsel.  To request a curative instruction would serve to reinforce the testimony to the jury.  In addition, evidence of the May 1995 incident had already been admitted from other sources.  There was no prejudice to Petitioner in failing to request a curative instruction.

There is no evidence in the record to support the post-conviction court's finding that counsel made a tactical decision to not request a curative instruction.  However, we agree with the post-conviction court that the petitioner has not demonstrated prejudice by clear and convincing evidence.  See Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (stating that this court need not address both prongs of the ineffective assistance of counsel test if the petitioner makes and insufficient showing of one prong).  LP testified, in support of count three, that the petitioner sexually penetrated her near the end of May 1995. This testimony was admitted without objection.  Thus, any error in admitting the disputed testimony was harmless.  See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b).  The petitioner is not entitled to relief based upon Dr. Bridges' testimony.

The petitioner appears also to object to Deputy Heflin's testimony regarding a statement made by LP on December 17, 1995, when Deputy Heflin arrived at the petitioner's residence in response to a 911 call.  At trial, Deputy Heflin testified that LP and her sister ran toward

---

[5] At the post-conviction hearing, the following colloquy was the sole reference made to any "fresh complaint" issue:

> Post-conviction Counsel: Has [trial and appellate] counsel ever discussed with you a hearsay exception of fresh complaint?  Did you know what that was?

> Petitioner: No, sir.

the police car and "were afraid, real nervous, [and] hysterical." LP informed Deputy Heflin that the petitioner had run into the woods with a gun. Deputy Heflin asked LP, "What else is going on?" In response, LP stated that the petitioner "had been messing with her." Deputy Heflin testified, "And I says, 'Messing with you, has he been touching your private parts?' And she said, 'Yes.' And I says, 'Has this happened before? And she says, 'Yes.'"

The petitioner essentially argues that this testimony was hearsay and should not have been admitted at trial. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). As a general rule, hearsay is not admissible during a trial, unless the statement falls under one of the exceptions to the rule against hearsay. See Tenn. R. Evid. 802. The petitioner complains that this testimony was erroneously admitted as fresh complaint testimony. However, the post-conviction court concluded and the State contends that the contested testimony falls under the hearsay exception for excited utterances. A statement is considered an excited utterance if it "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tenn. R. Evid. 803(2).

The petitioner maintains that because the statement was elicited by Deputy Heflin, it could not be considered an exited utterance. However, "[t]he fact that a question prompted the excited answer is a circumstance relevant to stress, but it does not automatically bar the statement's admission under Rule 803(2)." Neil P. Cohen, et al., Tennessee Law of Evidence, § 8.07[3][d], at 8-65 (LEXIS publishing, 4th ed. 2000); see also State v. Smith, 857 S.W.2d 1, 9 (Tenn. 1993). Deputy Heflin clearly testified that LP was "afraid, real nervous, [and] hysterical" when she approached him. See State v. Stout, 46 S.W.3d 689, 700 (Tenn. 2001), cert. denied, 534 U.S. 998, 122 S. Ct. 471 (2001). Shortly before the police arrived, the petitioner had attempted to abuse LP. LP's mother stopped the abuse, but the petitioner began chasing LP, LP's mother, and LP's sister with a gun. We agree with the post-conviction court that LP was likely under the "stress of excitement" of these events when she talked with Deputy Heflin. LP's statements related to the startling events. Thus, this testimony was admissible at trial. Therefore, the trial court did not err in allowing the testimony, nor was the petitioner prejudiced by trial counsel's failure to object to the testimony. See Goad, 938 S.W.2d at 369. This issue is without merit.

D. Prosecutorial Misconduct

Finally, the petitioner contends:

The State committed prosecutorial misconduct in eliciting an answer and that the [petitioner] was denied due process of law and the effective assistance of counsel in the testimony of the mother of the alleged victim and testifying "he took a 12 year old girl and took something from her she could never get back.

Again, we note that the petitioner has waived this argument by failing to raise this issue on direct appeal. Tenn. Code Ann. § 40-30-206(g) and -210(f). Nevertheless, we will briefly examine this issue.

At trial, LP's mother testified as a witness for the State. At the conclusion of direct examination, the following colloquy occurred:

> State: Mrs. Harris, is there anything you would like to add or tell this jury?
>
> Harris: Just that he took a 12 year old girl and took something from her she can never get back.

The post-conviction court found that, "[a]llbeit unwise, the question did not amount to prosecutorial misconduct. The [State] certainly could not have anticipated this answer." Furthermore, the post-conviction court observed, "Whether counsel should have objected is a tactical decision. To have objected would have emphasized this statement to the jury, even if they had been instructed to disregard it. Petition[er] has demonstrated no prejudice thereby."

We agree with the post-conviction court that such a question by the State only invited a troubling response. However, as the question was only a brief segment of the trial and it would be obvious to a jury that the sexual assault of a young girl would be life changing, we cannot find that the question "'affected the verdict to the prejudice of the [petitioner].'" State v. Middlebrooks, 995 S.W.2d 550, 559 (Tenn. 1999) (quoting Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965)); see also Anthony Richardson v. State, No. W2000-01438-CCA-R3-PC, 2002 WL 1482746, at *6 (Tenn. Crim. App. at Jackson, Feb. 7, 2002). Therefore, the petitioner is not entitled to relief on this issue.

As to the petitioner's related complaint that counsel was ineffective in failing to object to this testimony, we note that, again, we find no proof in the record to support the post-conviction court's finding that counsel's failure to object to the State's question was a tactical decision. However, the petitioner has presented no clear and convincing evidence regarding any prejudice he may have suffered by such questioning. Accordingly, the petitioner has failed to meet his burden of demonstrating ineffective assistance of counsel.

### III. Conclusion

In sum, we reverse the post-conviction court's dismissal of the petitioner's rape conviction and remand to the lower court for entry of a judgment of conviction reinstating that conviction. In all other aspects, the judgment of the post-conviction court is affirmed.

_____
NORMA McGEE OGLE, JUDGE

-12-