IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

SEPTEMBER 1996 SESSION



**FILED**

**June 24, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| APPELLEE, | ) | |
| | ) | No. 02-C-01-9505-CR-00136 |
| | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Will V. Doran, Judge |
| | ) | Sitting by Designation |
| | ) | |
| RONNIE BRADFIELD, | ) | (Attempted First Degree Murder, |
| | ) | Carrying a Firearm during a Judicial |
| | ) | Proceeding, Possession of a Firearm |
| APPELLANT. | ) | After Being Convicted of a Felony) |
| | ) | |

FOR THE APPELLANT:

Ronnie Bradfield, Pro Se
Route 1, Box 330
Tiptonville, TN 38079-9775

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Deborah A. Tullis
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37343-0493

William L. Gibbons
District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103

Johnny R. McFarland
Assistant District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103

Alanda Horne
Assistant District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Ronnie Bradfield (defendant), was convicted of attempted first-degree murder, a Class A felony, carrying a firearm during judicial proceedings, a Class E felony, and possession of a firearm after being convicted of a felony, a Class E felony, by a jury of his peers. The trial court, finding the defendant was a persistent offender, imposed a Range III sentence consisting of confinement for sixty (60) years. As to the remaining two offenses, the trial court found the defendant was a multiple offender and imposed a Range II sentence of four (4) years for each offense. In this Court, the defendant raises a multitude of issues. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this Court the judgment of the trial court should be affirmed.

On March 25, 1993, the defendant was convicted of three counts of second-degree murder in Division II of the Criminal Court for the Thirtieth Judicial District. The trial court held a sentencing hearing on May 20, 1993. The defendant was sentenced to serve nine (9) years in the Department of Correction in each case. The trial court revoked the defendant's bail and he was taken into custody.

The defendant was taken to a detention area adjacent to the courtroom. A courtroom door permitted ingress and egress between the courtroom and the detention area. Deputy Spencer Edwards, a courtroom bailiff, ordered the defendant to remove the contents from his pockets. The defendant complied and sat down. Deputy Edwards told him to stand because he had to search the defendant's body. While Deputy Edwards was standing over the defendant, the defendant removed a pistol from his shoe. A struggle ensued. Another courtroom bailiff, Deputy Ron Ray, heard the struggle and went to the detention area. He immediately tried to take the pistol from the defendant's hand. The defendant bit Deputy Ray's arm the first two times he attempted to take the pistol. He was able to wrestle the pistol from the defendant on the third attempt. The defendant quit struggling once the pistol was taken from him.

Since the defendant had previously been in the courtroom for the sentencing hearing, he was charged and indicted for the offense of carrying a firearm during a judicial

proceeding. The defendant had also previously been convicted of a felony. He was also charged and indicted for possessing a firearm after being convicted of a felony.

## I.

The defendant contends his right to a speedy trial was denied. He further contends the trial court erroneously failed to dismiss the charges against him because the state failed to prosecute.

The crimes in question occurred on May 20, 1993. The defendant's trial in this case lasted two days. It commenced on September 11, 1995 and concluded on the following day. The defendant's case was reset and continued many times. Most of the continuances were attributable to the defendant's actions. The record indicates the cause was reset seven times at the request of the defendant, never at the request of the state. This, however, does not tell the whole story. The transcript of the pre-trial proceedings indicates the cause was delayed eighteen times due to the actions of the defendant and once for the prosecution when a witness was out of town.[1]

---

[1]Beyond the times indicated as continuances for the defendant, the following delays occurred:

On August 11, 1993, Judge Weinman recused himself at the defendant's request, causing the matter to be rescheduled.

On December 14, 1993, the defendant indicated he desired elbow counsel. The trial court inquired if there was someone in particular the defendant desired. The defendant indicated he wished to discuss the matter with his prospective elbow counsel before he gave the court any name. The court therefore continued the matter to January 7, 1994 to consider the appointment of elbow counsel.

On June 16, 1994, the defendant was not feeling well and asked that the motions scheduled to be heard on that day be continued until August 15, 1994, the trial date.

On August 15, 1994, the prosecution asked that the trial be continued as one of the state's witnesses was out of town; on the defendant's request, the motions scheduled for this day were reset for September 1, 1994 and the trial scheduled for November 2, 1994.

On September 1, 1994, the cause was reset for September 20 as the defendant had not filed all the motions he wished to have heard. For reasons unexplained by the record, these motions were continued until October 18, on which date the court continued the motions until November 2 as the court had not received requested information from the defendant supporting his motion for a change of venue, motion for a hearing device, and motion to subpoena videotapes from television stations.

On January 12, 1995, after another delay the record does not attribute to either side, the trial judge ordered a mental evaluation of the defendant. The defendant was informed that if he was evaluated at the Shelby County Jail, the evaluation more likely would be complete by the then-scheduled trial date, February 13. If, however, he insisted on not being incarcerated at the Shelby County Jail, the evaluation would occur at the Tennessee Department of Correction and likely would not be complete until after February 13. The

(continued...)

A total of 844 days elapsed between the crime and the first day of trial. This Court estimates 563 days of the delay is directly attributed to the defendant; 79 days of the delay can be attributed to the state's continuance. The actions of the defendant accounted for approximately 67 percent of the time between the crime and the trial; the state's lone continuance accounted for nine percent of the time. The remaining time can be attributed to the court's management of its calendar.[2]

To determine whether an appellant's right to a speedy trial has been violated, this Court must consider four factors: 1) the length of the delay, 2) the reason for the delay, 3) whether the defendant asserted his right to a speedy trial, and 4) whether the defendant was prejudiced by the delay. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); State v. Vance, 888 S.W.2d 776, 778 (Tenn. Crim. App. 1994).

As stated above, 844 days elapsed between the date of the crime and the defendant's trial. The overwhelming majority of the time is directly attributed to the actions of the defendant. The defendant did assert his right to a speedy trial. Therefore, the only question which remains is whether the defendant suffered prejudice, the most important factor in our consideration. State v. Vance, 888 S.W.2d at 778.

As a result of the delay, the defendant contends three witnesses could not be called to testify; two could not be located and the third witness died.

---

(...continued)
defendant indicated that he was willing to postpone his trial in that event. The evaluation occurred on March 29, 1995.

On March 17, 1995, Judge Carolyn Wade Blackett recused herself to avoid a conflict of interest as the defendant filed a complaint against her in the Tennessee Court of the Judiciary.

The case was therefore reassigned to the court of the Honorable W. Fred Axley. Judge Axley denied the defendant's motion to dismiss for failure to prosecute, but granted the defendant's motion for an interlocutory appeal under Rule 10 of the Tennessee Rules of Appellate Procedure.

The case was thus held in abeyance pending the decision of the Court of Criminal Appeals, which denied the defendant's request for an extraordinary appeal on June 19, 1995. On August 6, 1995, the defendant filed a motion in the Tennessee Supreme Court requesting an emergency stay of the proceedings in the trial court. This motion was denied and the case proceeded to trial.

Neither party is listed as requesting any of these continuances in the technical record, however, with the exception of the state's one continuance, the blame for each of these delays rests squarely with the defendant.

[2]Delays by the court as it attempted to manage its calendar, which occurred following a defense delay, are not credited against the defendant in this calculation. However, most of the 202 days regarded as the court's management of its calendar occurred after defense delays.

4

The defendant has yet to offer the content of the three witnesses' testimony. The defendant stated at one of the motion hearings two of the missing witnesses were in the courtroom the day of the incident and that the third helped him get ready for court before he left home. We know nothing more of the defendant's missing witnesses. The defendant has failed to demonstrate prejudice.

Additionally, after the death of James Downey, one of the missing witnesses, the defendant delayed the proceedings eight times, causing a delay of 264 days. After he filed his motion to dismiss for failure to prosecute, he delayed the proceedings six times, causing a delay of 245 days.[3] The defendant may not complain of the two-year delay between his initial court appearance and his trial when he has failed to demonstrate prejudice and is responsible for the bulk of that delay, much of which he caused after the alleged prejudice he insufficiently asserts.

This issue is without merit.

## II.

The defendant appears to argue his self-representation was impaired because he was not released on bail. The defendant, over the advice of three trial judges, chose to represent himself. He understood the perils of self-representation and was specifically made aware that his ability to investigate his case would be impaired by his incarceration.

On August 23, 1993, the defendant appeared before Judge Lockard and inquired who was responsible for prosecuting his case. The judge informed him he would have to contact the District Attorney General's Office to learn that information. The defendant complained he was unable to call them as he was incarcerated. Judge Lockard informed the defendant that this was one of the problems with self-representation.

The defendant's defense was likely impaired by his incarceration; however, he was repeatedly offered appointed counsel. There is no right to the effective assistance of pro se counsel; the trial court was under no duty to release him on bail merely because the

---

[3]Downey deceased on July 25, 1994. The defendant filed his motion to dismiss for failure to prosecute on September 16, 1994.

defendant opted to forego the assistance of a trained lawyer capable of investigating the defendant's case. Faretta v. California, 422 U.S. 806, 834, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 n.46 (1975). For the defendant, the heightened difficulty of preparing his case from a jail cell was "one of the penalties of self-representation." Cole v. State, 798 S.W.2d 261, 264 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

Also, the defendant has been convicted of three serious felonies. The trial court revoked the defendant's bail. In other words, the defendant was serving the sentences imposed for these felonies. This fact had to be considered at any bail hearing.

This issue is without merit.

### III.

### A.

The defendant appears to argue the trial court interfered with his right to self-representation when it appointed standby, or elbow counsel. The defendant states, "From the onset of the defendant's preliminary proceedings the defendant requested to represent himself, and the judge was in error, to only allow the defendant to proceed pro se, only if he takes on standby counsel."

A defendant does have a Sixth Amendment right to proceed without the assistance of counsel. Faretta v. California, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975). However, a "defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel -- even over the defendant's objection -- to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." McKaskle v. Wiggins, 465 U.S. 168, 184, 104 S.Ct. 944, 954, 79 L.Ed.2d 122 (1984).

The defendant actually requested elbow counsel and hand-picked the person to be so appointed.

This issue is without merit.

6

**B.**

The defendant asserts he was denied his right to self-representation when the trial court "ordered" him to listen to the advice of elbow counsel.

Throughout the proceedings, pre-trial and at the trial itself, the presiding judge instructed the defendant to refer to his elbow counsel for advice. In one poignant example, on the day of trial, the defendant moved for a continuance, claiming he was not notified he was going to trial on that day, he was unable to summon certain witnesses over the weekend, he did not have his pleadings with him, he had been gassed over the weekend, and at some point after he was gassed, he passed out and was placed in a van by the prison guards where he awoke on his way to trial, with ice in his trousers. The trial court instructed the defendant that he would not have his courtroom turned into a circus and further instructed the defendant to refer to his elbow counsel for advice.

As previously stated, the Sixth Amendment to the United States Constitution provides a criminal accused either the right to assistance of counsel or the right to represent himself. Faretta v. California, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975). "In determining whether a defendant's Faretta rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way." McKaskle v. Wiggins, 465 U.S. 176, 177, 104 S.Ct. 944, 950, 79 L.Ed.2d 122 (1984).

A pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury and unsolicited participation by elbow counsel should not be allowed to destroy the jury's perception the defendant is representing himself. McKaskle, 465 U.S. at 178, 104 S.Ct. at 951. The defendant's right to proceed pro se is preserved outside the presence of the jury if the defendant is allowed "to address the court freely on his own behalf and if disagreements between the defendant and elbow counsel are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel." Id.

The defendant alleges, and the record supports, only that the trial court told the defendant to refer to elbow counsel for instruction on "basic rules of courtroom protocol"

7

and rudimentary concepts of law. At no point did the court accept the judgment of elbow counsel over that of the defendant or require the defendant to accept the advice of elbow counsel. A defendant representing himself is governed by all the rules relating to trial practice including the contempt power of the court. See Cole v. State, 798 S.W.2d 261, 264 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). The trial court's attempt to assist the defendant in abiding by the laws and rules of court which bound his actions did not inhibit the defendant's efforts to represent himself.

This issue is without merit.

## C.

The defendant incoherently states something about being denied the effective assistance of counsel. If the defendant is claiming his own ineffective assistance, his argument is without merit as the pro se defendant "assumes the responsibility for his inadequacies." Cole v. State, 798 S.W.2d at 264. "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of the effective assistance of counsel." Faretta v. California, 422 U.S. 806, 834, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 n.46 (1975).

If the defendant is claiming ineffective assistance of his standby, or elbow, counsel his point is also without merit. "The right of a defendant to participate in his own defense is an alternative one. That is, one has a right either to be represented by counsel or to represent himself, to conduct his own defense." State v. Melson, 638 S.W.2d 342, 359 (Tenn. 1982), cert. denied, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983) (emphasis in original). The defendant waived the right to counsel, proceeded pro se, and even claims in this Court the trial court interfered with his absolute right to self-representation. The defendant therefore may not contest the adequacy of his elbow counsel. Moreover, the record is void of evidence that elbow counsel was ineffective.

This issue is without merit.

**IV.**

The defendant contends he was prejudiced by having to face the jury in prison attire. In a pre-trial order, the defendant had been granted the right to appear in court in civilian clothes.

On the day of trial, the defendant appeared in his prison uniform and, after making several frivolous motions to continue his case, requested the right to change out of his prison attire. The trial court asked if the change of clothes had been brought into the courtroom. The bailiff responded that the defendant had had the opportunity to change into his court clothes since 9:30, but had not done so. Hearing this, the trial court, without affording the defendant an opportunity to change, summoned the jury back into the courtroom and proceeded with the trial.

Ordinarily, a defendant may not be forced to appear in shackles or in prison garb, Estelle v. Williams, 425 U.S. 501, 504-05, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976), however, the defendant waived his right to appear in civilian clothes when he failed to take the opportunity provided him to change. However, if this was error, it was harmless beyond a reasonable doubt.

This issue is without merit.

**V.**

The defendant contends the trial court committed error of prejudicial dimensions when it denied his motion for a continuance on the day of trial. The defendant moved for a continuance on the grounds (a) he had not been able to summon certain witnesses, (b) he had been gassed over the weekend, (c) he had had "blank-out attacks," and (d) unaware he was to be tried that day, he awoke with ice in his pants in a van taking him to court.

A motion for a continuance is left to the sound discretion of the trial court. State v. Goodwin, 909 S.W.2d 35, 44 (Tenn. Crim. App. 1995); State v. Cazes, 875 S.W.2d 253, 261 (Tenn. 1994), cert. denied, 513 U.S. 1086, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995).

9

The defendant offered nothing to substantiate his outrageous allegations. The trial court did not err in concluding that a continuance was unwarranted and a further attempt by the defendant to delay the proceedings. Moreover, the defendant failed to follow the proper procedure for a continuance on the ground of a missing witness.

This issue is without merit.

## VI.

The defendant claims he was prejudiced in that he was not informed of his trial date. On August 6, 1995, the defendant filed a motion for an emergency stay of the proceedings in the trial court. In that motion he stated he had been "advised that he will be tried on September 11, 1995." (emphasis in original.)

This issue is therefore utterly without merit.

## VII.

The defendant contends the trial judge erred by not recusing himself. As the defendant states it, "The judge which was very noticeable to the defendant short-tempered, and raised his voice to the defendant on several occasions, which to say the least intimidation to the defendant, which put him in a position of frustration which hamper his presentation of his motion(s) which should not have been allowed. [sic]"

A judge's comments must reflect more than insensitivity and lack of sympathy on the part of the trial judge before his words can require reversal. Alley v. State, 882 S.W.2d 810, 822 (Tenn. Crim. App. 1994). The defendant has alleged only that he was intimidated by the judge and the judge made rulings adverse to his position. The defendant has failed to demonstrate, as he must to prevail on this point, that the judge was biased against him.

This issue is without merit.

10

**VIII.**

**A.**

The defendant claims his "opening statement was hampered and violated by the judge." During the opening statement, the defendant stated:

> I have been asking the court to take me to trial. I filed a motion stating ordering the court to get this behind me, but when I assert my right to be tried early in this court date, the state wouldn't even bring me to trial. The state was only willing to try me once my defense was lost. I have been to court over forty-five times trying to get this behind me ---.

The assistant district attorney general objected on the ground the defendant was testifying to the jury and the trial judge sustained the objection. The trial court implored the defendant to merely state his defense, not testify.

A pro se defendant is not allowed to use the opening statement as a vehicle to testify. Therefore, the trial court properly limited the defendant's opening statement.

**B.**

The defendant also appears to argue the trial court improperly limited his closing statement. The defendant was not interrupted by either the trial judge or the assistant district attorney general during his closing statement.

This issue is without merit.

**IX.**

The defendant lists as one of his issues on appeal, "Wether [sic] improper jury instructions . . . prejudice[d] . . . the defendant." The defendant contends the jury should have been given an instruction on circumstantial evidence. Incidentally, the Court notes this is one of those rare cases in which absolutely no circumstantial evidence was offered in the state's case in chief. Moreover, it is not error to fail to charge on circumstantial

11

evidence when both direct and circumstantial evidence is introduced at the trial absent a special request.

The defendant further contends the trial court erred by not instructing the jury the state was required to disprove all reasonable theories except that of guilt. This is but another attack on the failure to charge on circumstantial evidence.

The defendant has waived both these issues by failing to request the desired jury instruction. Rule 36(a), Tenn. R. App. P.; State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982); State v. Smith, 626 S.W.2d 283, 285 (Tenn. Crim. App. 1981).

## X.

The defendant contends he was prejudiced because the presiding judge was unfamiliar with the pre-trial process in his case. The defendant's pre-trial proceedings fill 36 volumes and reveal his multiple attempts to bring the wheels of justice to a grinding halt. The defendant's argument that he was prejudiced because the trial court was unfamiliar with his dilatory actions is preposterous and waived as he fails to offer any argument or authority for his position. Tenn. R. App. P. 27(a)(7), (h); Tenn. Ct. Crim. App. R. 10(b).

## XI.

The defendant appears to contest the sufficiency of the evidence.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Nor may this Court substitute its inferences for those

drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

As Deputy Edwards attempted to take the defendant into custody, the defendant reached for his gun and as the two struggled for the weapon, the defendant informed the deputy that he might as well give up because the defendant was going to "shoot [his] ass."

The jury could infer the defendant took a substantial step toward his stated goal, namely shooting the victim. Though not a necessary inference, the jury certainly could have inferred the defendant meant to shoot and kill the victim. The evidence is, in other words, sufficient to support the conviction for attempted first-degree murder. And, as this incident occurred in a courtroom immediately after the defendant's sentencing on three attempted second-degree murder counts, the evidence is sufficient to support a verdict of guilty on the charges of being a felon in possession of a firearm and carrying a firearm in a judicial proceeding.

13

## XII.

### A.

The defendant contends the trial court considered a presentence report which contained incorrect information. At the sentencing hearing, the defendant similarly objected to the introduction of a report containing incorrect information.

The defendant has failed to identify the allegedly incorrect information contained in the presentence report. Nor has the defendant prepared a supplement to the report as permitted. We therefore may not consider this point of error.

### B.

The defendant contends his sentences are excessive. The trial court found the defendant to be a persistent offender for the attempted first-degree murder conviction and a multiple offender for the firearms convictions.

The trial court found the following aggravating factors for the attempted murder conviction: the defendant possessed a firearm in the commission of the offense, Tenn. Code Ann. § 40-35-114(9); the defendant had no hesitation about committing the crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(10); the felony was committed while the defendant was incarcerated, Tenn. Code Ann. § 40-35-114(14); and the defendant committed the crime when the potential for bodily injury was great, Tenn. Code Ann. § 40-35-114(16).

On the conviction for carrying a firearm into a judicial proceeding, the trial court found that the defendant possessed a firearm, Tenn. Code Ann. § 40-35-114(9), had no hesitation about committing the offense when the risk to human life was high, Tenn. Code Ann. § 40-35-114(10), and committed the felony while on bail, probation, or other type of release, Tenn. Code Ann. § 40-35-114(13).

On the conviction for possession of a weapon by a felon, the trial judge found that the defendant possessed a firearm, Tenn. Code Ann. § 40-35-114(9), had no hesitation about committing the offense when the risk to human life was high, Tenn. Code Ann. § 40-

35-114(10), and committed the felony while incarcerated, Tenn. Code Ann. § 40-35-114(14).

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1994). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311. In this case, the defendant has the burden of illustrating the sentences imposed by the trial court are erroneous.

It seems self-evident the charges of possession of a weapon in a judicial proceeding and being a felon in possession of a weapon may not be enhanced because the defendant

15

demonstrated the audacity to commit these crimes while possessing a weapon. See State v. Elijah Walker Graham, Hardin County, No. 02-C-01-9311-CC-00257 (Tenn. Crim. App., Jackson, August 17, 1994), per. app. denied (Tenn. 1994); State v. Billy Ratcliffe, Williamson County, No. 01-C-01-9303-CC-00099 (Tenn. Crim. App., Nashville, March 3, 1994), per. app. denied (Tenn. 1994). This factor may, however, properly be applied to enhance the attempted murder charge. Possession of a weapon is not necessarily implied in the charge of attempted first-degree murder. State v. Trusty, 919 S.W.2d 305, 313 (Tenn. 1996).

The trial court properly applied enhancement factor (10). While Deputy Edwards was the victim, Deputy Ray was present in the detention area, and, therefore, was in harm's way. It is conceivable that if the gun was fired, the projectile could have bounced off a wall or other object and struck someone in the courtroom. See State v. Ruane, 912 S.W.2d 766, 784 (Tenn. Crim. App. 1995); State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App.), per. app. denied (Tenn. 1994).

The trial court properly applied enhancement factor (16). Again, Deputy Ray was in harm's way, and, if the defendant had fired a projectile, the projectile could have bounced off a wall or other object and struck someone in the courtroom. See State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App.), per. app. denied (Tenn. 1995); Makoka, 885 S.W.2d at 373.

The defendant was incarcerated when he attempted to kill Deputy Edwards, was free on bond when he walked into the courtroom with the weapon and possessed a weapon as a felon while incarcerated. These factors are entitled to great weight and indicate that the defendant is not amenable to complying with society's rules, whether in or out of prison.

Even though we find the trial court improperly applied certain factors, attaching great weight to those properly applied, we affirm the judgment and sentence of the trial court.

_____
JOE B. JONES, PRESIDING JUDGE

16

CONCUR:


_____
DAVID H. WELLES, JUDGE


_____
JERRY L. SMITH, JUDGE