IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 13, 2003

## STATE OF TENNESSEE v. PAUL PETTIBONE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-B-936     Cheryl A. Blackburn, Judge**

---

**No. M2002-03021-CCA-R3-CD - Filed October 17, 2003**

---

The appellant, Paul Edward Pettibone, Jr., pled guilty to the offense of attempted aggravated robbery, a Class C Felony. He was sentenced to four years as a Range I, standard offender. The trial judge ordered the appellant to serve his sentence in incarceration, but asserted that if the appellant successfully completed an addiction treatment program known as Lifeline Therapeutic Community, he could apply to the court to suspend the rest of his sentence.[1] In this appeal as of right, the appellant contends that the trial court erred by failing to grant either an alternative sentence or a term of probation after a period of confinement. After a review of this case, we conclude that the evidence did not support the grant of an alternative sentence or a term of probation after a period of confinement and thus affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, J., joined.

William J. Steed, Assistant Public Defender (on appeal), and Paul B. Seusy, Assistant Public Defender (at trial), Nashville, Tennessee, for the appellant, Paul Pettibone.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]The judgment form reflects that the appellant is to serve his sentence in "CCA." This is apparently the acronym for Corrections Corporation of America which privately manages a local penal facility for Davidson County. Accordingly, the appellant's sentence is one that is permitted by law for those counties who have contracted with the Tennessee Department of Correction to house convicted felons. See Tenn. Code Ann. §§ 40-35-104(b), 40-35-314.

# OPINION

## Factual Background

The appellant was indicted by the Davidson County Grand Jury for attempted aggravated robbery, which occurred on March 6, 2002. Pursuant to a plea agreement, the appellant pled guilty to attempted aggravated robbery, a Class C felony. At the plea agreement hearing, the state's proof was summarized as follows:

> [O]n March the 6th of this year . . . [victim] was getting out of her vehicle, I believe at the Media Play in Hickory Hollow here in Davidson County, when the defendant approached her with what appeared to be a long barreled revolver, pointed it at her and demanded her car keys and money. She told him she didn't have any money, and she tried to get back in her car. . . . [Appellant] told her that he would kill her, so she threw her car keys. And then . . . [appellant] just turned and walked away behind Media Play. The police responded with K-9, ran a track, caught . . . [appellant], recovered the pellet gun, and . . . [appellant] admitted what he had done.

The trial court sentenced the appellant to the agreed-upon disposition of four years as a Range I, standard offender. The manner of service of the sentence was left to the discretion of the trial court and a sentencing hearing was scheduled.

At the sentencing hearing, the trial judge heard testimony from both the victim and the appellant. The victim's testimony paralleled the state's summary of the events. The testimony was that on March 6, 2002, the victim, a female, parked in a handicapped parking place at Media Play in the Hickory Hollow area of Nashville. As she was exiting her vehicle, she was approached by the appellant. He pointed a gun at her and told her to hand over her purse and car keys. At that time, the victim attempted to get back into her vehicle. The appellant then told her that he was going to kill her if she did not comply with his request. The victim then threw her car keys at the appellant, which hit him in the chest and fell to the ground. The appellant turned around and walked away. The victim ran into the store to call the police.

When the police responded, a K-9 officer was called. The appellant was located behind the store by the K-9 officer. He was taken into custody, brought around to the front of the store, and identified by the victim.

The appellant testified that he suffered from mental illness and that he was diagnosed by medical personnel several times over the last five years with manic depression or bipolar disorder. He requires medication to stabilize his condition. He was released from the hospital, after treatment for his bipolar disorder, two days prior to the incident, was homeless, and was not taking his medication due to his own failure to get his prescription filled. Earlier in the day prior to the incident, the appellant consumed approximately two twelve packs of beer without eating anything.

His testimony indicated that a "spur of the moment" decision "possessed me to turn around and pull a pistol on [the victim]." The pistol was a pellet or BB pistol that he had stolen from Wal-Mart and hoped to sell. When the victim threw her car keys at the appellant, he turned around and walked approximately one hundred yards to an area behind Media Play, where he had stayed for a couple of days prior to the incident while trying to find somewhere to live.

The trial court denied alternative sentencing and ordered the appellant to serve out his sentence of four years in incarceration. However, the trial court asserted if the appellant successfully completed the Lifelines Therapeutic Community program, he could apply to the court to have the remainder of his sentence suspended.

In this appeal, the appellant argues that the trial court: (1) failed to adequately consider his presumptive eligibility for alternative sentencing and failed to state on the record adequate grounds for overcoming that presumption; (2) failed to adequately discuss how application of the factors enumerated in Tennessee Code Annotated section 40-35-103(1) was justified by the record; (3) failed to discuss any mitigating or enhancement factors; and (4) failed to take into account the appellant's significant potential for rehabilitation. The state contends that the trial court properly denied the appellant alternative sentencing and ordered him to undergo treatment while incarcerated so that he has a better chance at successful rehabilitation.

**Standard of Review**

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

Alternative Sentencing

A defendant "who is an especially mitigated offender or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Furthermore, unless sufficient evidence rebuts the presumption,"[t]he trial court must presume that a defendant sentenced to eight years or less and not an offender for whom incarceration is a priority is subject to alternative

sentencing, Ashby, 823 S.W.2d at 169, and that a sentence other than incarceration would result in successful rehabilitation . . . ." State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993); see also Tenn. Code Ann. § 40-35-303(a).

However, all offenders who meet the criteria are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is presumed to be a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), the statutory presumption of an alternative sentence may be overcome if

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C).

In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "The potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5); see also State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); see also State v. Bunch, 646 S.W.2d 158, 160-61 (Tenn. 1983); State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Williamson, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); Dowdy, 894 S.W.2d at 305-06.

> [I]t is obvious that the intent of the legislature is to encourage alternatives to incarceration in cases where defendants are sentenced as standard or mitigated offenders convicted of C, D, or E felonies. However, it is also clear that there is an intent to incarcerate those defendants whose criminal histories indicate a clear disregard for the laws and morals of society and a failure of past efforts to rehabilitate.

State v. Chrisman, 885 S.W.2d 834, 840 (Tenn. Crim. App. 1994).

The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is an appropriate candidate for full probation are two different inquiries that require two different burdens of proof. See State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim.

App. 1996). Although Class C, D, and E felony offenders are presumed to be favorable candidates for alternative sentencing, it is the defendant who has the burden of demonstrating his suitability for total or immediate probation. State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995); see Tenn. Code Ann. § 40-35-303(b).

In this case, the appellant was convicted of attempted aggravated robbery, a Class C felony. As a Range I, standard offender convicted of and sentenced to four years for this offense, there is no dispute that the appellant was eligible for alternative sentencing. See Tenn. Code Ann. §§ 40-35-102(6), 40-35-303(a); Byrd, 861 S.W.2d at 379-80. Thus, the trial court was required to consider probation as a sentencing option. See Tenn. Code Ann. § 40-35-303(b).

The record establishes that the appellant, 46 years of age at the time of sentencing, had several prior convictions including a felony conviction in 1975 for receiving stolen property. The presentence report established that the appellant was arrested in 1994 and 1995 for driving under the influence and was granted a suspended sentence and probation for second offense driving under the influence, but the appellant admitted that he has "quite a few DUIs." In testifying about one of the DUI convictions, the appellant stated that while he was charged with a fifth offense DUI, he was eventually convicted of a second offense.[2] The presentence report also establishes that the defendant had a charge for aggravated assault which was retired.

During the opening statements at the sentencing hearing, the state's attorney asserted that the presentence report failed to reflect all of the defendant's convictions; however, he stated that he had no certified copies of these convictions and did not make a motion to amend the report, instead relying on cross-examination of the appellant to supplement the presentence report as to the appellant's criminal history.[3]

During cross-examination by the state, however, the appellant candidly mentioned other instances of criminal conduct during his testimony, including several offenses not reflected in the

_____

[2]The report lists the date of conviction for both counts of driving under the influence as "09/07/1995," and lists one sentence as "PET SUSP. SENT.- GRANTED (DUI2ND)" and the other as "OFF/DUI 5TH - (P)DUI 2ND; $1,000 FINE + COSTS. 11/29 (S)PROB. + TREAT. + 120 HRS.PSW + 2YRS. REV. LIS."

[3]On appeal, the appellant argues that this Court should consider only the testimony of the appellant and the presentence report as evidence of the appellant's criminal history, not the assertions of counsel for the state regarding convictions and arrests which did not appear on the presentence report. The appellant also argues that a handwritten notation was added to the original presentence report which states, "Totally incorrect - the Δ has multiple convictions for stolen property theft" and that this notation should not be considered by this Court. The appellant did not object to the introduction of the presentence report. Further, his own testimony at the sentencing hearing indicated a more extensive criminal history than that revealed by the presentence report. The appellant had an opportunity at the sentencing hearing to challenge the presentence report as inaccurate or incorrect and prepare a supplement to that report or offer testimony to rebut the information contained in the presentence report. He chose not to take any corrective measures. Issues not raised in the trial court will not generally be considered by this Court on appeal. Simpson v. Frontier Cmty. Credit Union, 810 S.W.2d 147, 153 (Tenn. 1991); State v. Brasfield, 973 S.W.2d 937, 948 (Tenn. Crim. App. 1997).

presence report. The appellant admitted to a citation for theft of property for shoplifting on February 25, 2002 at Rivergate Mall and a conviction for theft of merchandise under five hundred dollars at Rivergate Mall on October 31, 2001, for which he was found guilty and served ninety days at thirty percent. In fact, the appellant admitted to being arrested two or three times for shoplifting in the last few years. Counsel for the state questioned the appellant about specific arrests for theft occurring on October 8, 2001, September 29, 2001, and September 27, 2001. After being questioned about these three theft arrests, the appellant replied, "No sir [I do not remember all of them]. I haven't kept track of them. I'm not saying it didn't happen. But if you're asking me to recall how many times I've been arrested for shoplifting, I don't know." The appellant asserted that he did not have any arrests in Tennessee between 1983 and 1994. However, the appellant was questioned about an arrest in Florida in 1992, and while he admitted to the arrest, he did not recall the particular date or circumstances. The appellant also admitted that he was arrested in Colorado when he was nineteen years old.

The appellant attended Franklin High School until 1973, when he dropped out of school in the eleventh grade. He went on to obtain a GED in 1977. His employment history included several short-term, weekly wage jobs from 1999 to 2001 but that employment could not be verified. He testified that he had worked all his life and that for the most part he had good jobs but that "in the last four or five years my mother passed away and my ex-wife passed away. And I've kind of let things slide since then."

At 6'1" and 165 pounds, the appellant describes his physical health as "good" although he is prescribed lithium for manic depression/bipolar disorder and drinks up to two fifths of liquor daily. He reported his last use of marijuana in 1990. The appellant participated in and completed several treatment programs for alcoholism including one at Cumberland Heights in 2001 and one at Tennessee Christian Medical Center in 2000. He was last treated for bipolar disorder at Vanderbilt in 2002.

The presentence report established that the appellant had a somewhat disjointed family life. His mother's name was not in the report. His father reportedly lives in Florida and his sister resides in Brentwood. The appellant has two ex-wives and a total of four children. The report indicated that two of the children are adults and he does not have custody of the other two. He pays $400 monthly in child support. The appellant reported a child support arrearage, but stated that he normally gets a garnishment on his wages to pay the support. The presentence report stated that "[appellant] wished he had a closer relationship with his children and his father."

The appellant expressed remorse about the incident, stating, "I'm extremely sorry for what happened. . . . And then for her to have to sit up here and you question her when I'm the one that did something to her, it made me feel even worse."

The appellant testified that while in custody awaiting the sentencing hearing, he secured conditional acceptance into two halfway house programs, Shipley House and Oxford House, which offer alcohol treatment programs. While recognizing his alcohol problem, the appellant expressed

his desire for treatment and a "willingness to do what I'm told to do." He also informed the court that a caseworker would help him manage his bipolar disorder.

After receiving testimony from the victim and the appellant, the trial court found:

> All right. Well, . . . [appellant], you pled guilty to attempted aggravated robbery. It is a C felony. The agreed upon sentence is four years as a Range 1 standard offender, which means you are presumed eligible [for probation]. However, just because you are presumed eligible doesn't necessarily mean you are eligible in the sense you still have to convince me that you are suitable for an alternative sentence, that is, complete suspension of your sentence. I have to look at whether or not there have been measures least restrictive frequently or recently applied to you, what your criminal history is and what's necessary to avoid the depreciating the seriousness of this offense.
>
> Actually, . . . [the appellant] presents a pretty remorseful picture. . . .
>
> That being said, . . . [appellant], you haven't convinced me at this point. Obviously you have not been in a position to participate in any programs because of where you're located. Well, you now will be. I want you to enter the Lifelines program, because the problem is - - it's not just drugs and alcohol. It's a whole lifestyle kind of issue. You need some life skills, and you need a few other things. I'm not saying I'll never grant you probation but just not at this point. I just don't think that - - I think there's been too many times in your past where other alternatives have been applied. So I'm going to order you into the Lifelines program. If you successfully complete that and have no write-ups, then . . . [counsel] can apply to suspend your sentence. But just not at this time, I'm not sufficiently convinced that's the appropriate resolution to this. . . .

The appellant asserts on appeal that the trial court failed to make the required findings of fact on the record so as to accord the sentence in this case the presumption of correctness as prescribed by Tennessee Code Annotated section 40-35-401(d). While the trial court did not make specific findings of fact, it did express concern about the appellant's previous criminal history, alcohol problems and history of treatment failure, concluding that he needed to be placed in a program where he would be forced to deal with his alcohol and lifestyle issues.

After a <u>de novo</u> review of the record, we note that there are factors which weigh in the appellant's favor for probation, namely his successful proactive attempts to secure conditional acceptance at two halfway houses and his recognition of his own problems with alcohol and bipolar disorder. However, the appellant has numerous prior encounters with the legal system, and yet continued to commit crimes. Although the appellant's actions are likely the result of his mental health and alcohol problems, it is equally evident that past attempts to rehabilitate him have frequently and recently been unsuccessful. He attended and completed alcohol treatment programs

at least two times since 2000, and admits that he was not taking his medication for bipolar disorder at the time of the offense. The appellant, has not, in our view, satisfied the burden of showing his entitlement to immediate probation. Thus, after considering the circumstances of the offense, including appellant's use and abuse of alcohol, appellant's potential for rehabilitation in light of two recent failed attempts at such, and his criminal history as established by the presentence report and his own admissions, we conclude that there is sufficient evidence in the record to rebut the appellant's presumption of entitlement to alternative sentencing. The judgment of the trial court is therefore AFFIRMED.

_____
JERRY L. SMITH, JUDGE