IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 3, 2003

## STATE OF TENNESSEE v. FREDREQUOS DAMON NEAL

**Appeal from the Circuit Court for Madison County**
**No. 01-592     Roy B. Morgan, Jr., Judge**

_____

**No. W2002-00946-CCA-R3-CD - Filed November 7, 2003**

_____

The defendant, Fredrequos Damon Neal, was convicted by a Madison County Circuit Court jury of attempted first degree murder, a Class A felony. The trial court sentenced him to twenty-two years as a Range I, standard offender. The defendant appeals, claiming that the evidence is insufficient to support his conviction and that his sentence is excessive. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Didi Christie, Brownsville, Tennessee (on appeal); George Morton Googe, District Public Defender and Stephen P. Spracher, Assistant Public Defender (at trial), for the appellant, Fredrequos Damon Neal.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's conduct toward Frederick Pearson on May 11, 2001. At trial, Officer Brandon Moss testified that he was working for the Jackson Police Department when he responded to a call from 332 Fairmont Street. He said that when he arrived at the address, he found the defendant lying on the front porch with a gunshot wound in his chest. Officer Julian Wiser of the Jackson Police Department testified that when he arrived at the scene, he found a black Tech-9 handgun in the bushes.

Kaska Bond, the victim's sister-in-law, testified that the victim lived next door to the defendant's aunt, Erica Cole, and that she saw the defendant talking to his aunt on May 11, 2001.

She said that when the victim arrived at her sister's house, the defendant walked toward her sister's house and pulled out something from the crotch of his pants. She said she went inside her sister's house and locked the doors. She said that when she heard gunshots, she dialed 9-1-1. On cross-examination, she said she knew the defendant well and had never seen him with a gun before. She said no one was with her when she saw the defendant approach the victim, but she admitted that she told the police that her sister and her sister's babysitter were outside with her at the time.

Frederick Pearson, the victim, testified that on May 11, 2001, he saw the defendant at a convenience store. He said that the defendant was posing and making hand gestures toward him and that the defendant made death threats against him. He said the defendant was upset because he had testified against Marcus Gillard on May 10, 2001. He said that when he returned home, he saw the defendant's car in the driveway that Pearson and the defendant's aunt shared. He said the defendant walked toward him while pulling a gun from his pants. Pearson said that he grabbed his own gun from his truck with his right hand and that with his left hand, he grabbed the defendant's gun. He said that he shot the defendant four times in the chest, that the defendant fell down, and that he ran behind his house toward his garage after he shot the defendant. He said that the defendant began shooting at him as he ran and that a bullet grazed his shoulder.

On cross-examination, Pearson said that the defendant and Gillard robbed him in November 2000 but that the defendant was never arrested for the robbery. He denied that he and two friends told the defendant two weeks before the shootings they were going to get him and showed him their guns. He said that he bought his gun from a man off the street and that he lied when he told the police he bought the gun on a fishing trip.

Michael Holt of the Jackson Police Department testified that he investigated the incident that occurred between the defendant and the victim. He said that he found the victim's revolver in the backyard and that it contained four spent casings and one live round. He said the Intratec Tech-9 semiautomatic handgun found in the bushes had one live round in the chamber, twenty-one live rounds in the magazine, and four spent casings. He said he found five spent casings in the victim's yard. He said there were two gunshot holes in the victim's garage, a bullet mark on the vehicle parked in front of the garage, and a bullet inside the garage. On cross-examination, he said that the bullets and casings were found on May 12, 2001, and that no police officers were posted at 332 Fairmont Street on the night of May 11 to secure the crime scene.

Dinnah Caluag of the Tennessee Bureau of Investigation testified that she was a special agent for forensic science in the identification of firearms. She said that tests showed that the bullet found in the defendant's chest was from the victim's gun. She said tests conclusively showed that one bullet found in the victim's yard was fired from the defendant's gun and that one bullet from the yard was consistent with being fired from the defendant's gun. She said that eight cartridge cases had been chambered in the defendant's gun and that they may have been fired from the defendant's gun.

Ebony Smith testified that she was the defendant's girlfriend and that May 11 was the defendant's birthday. She said that she drove her car to a convenience store with the defendant to

get gas and that after the defendant paid for the gas, she heard someone yell something at the defendant. She said the defendant replied by saying "What" and walked toward the individual. She said, to her knowledge, there was no trouble at the convenience store. She said she took the defendant to his aunt's house because his aunt told him that she had a birthday present for him. She said she spoke with his aunt and then drove away from the house. She said she heard gunshots after leaving the defendant's aunt's house. On cross-examination, she said she and the defendant did not go to his mom's house after leaving the convenience store.

Erica Cole, the defendant's aunt, testified that she had never seen the defendant with a gun. She said she was talking to the defendant's girlfriend when the victim drove to her house. She said that when Ebony drove away, she heard gunshots. She said she turned around and saw the victim shooting the defendant. She said she heard three gunshots and saw the defendant fall down. She said she never saw the defendant with a gun. She said she ran into her house and called the police. She said she heard a knock at her door and opened it to find the defendant lying on the front porch. She said she heard three to four more gunshots while the defendant was at the front porch. She said the defendant and the victim were arguing before the gunshots were fired. She said that two weeks before the shooting, she saw the victim and two of his friends "clicking" their guns while the defendant was at her house. On cross-examination, she said that the police incorrectly wrote that she told them that she was inside when she heard the gunshots and that the defendant knocked on the door after all the gunshots were fired. She said she did not check her statement when the police wrote it because she was in a hurry to reach the hospital. She denied telling Officer Moss the same story that was in her statement.

Ashley Cole, the sixteen-year-old cousin of the defendant, testified that the victim's truck door opened and two shots were fired from the victim's truck. She said that she saw the victim point a gun at the defendant and that she ran to her house at that time.

The defendant testified that he never robbed the victim and that he did not know anything about the victim testifying against Gillard. He said that while he was at the convenience store, the victim threatened him. He said he was only carrying a gun to protect himself from the victim. He said that as he approached the victim from his aunt's house, the victim began shooting him and he fell down. The defendant said he began shooting at the victim when the victim ran away from him. He said he was on strong medication when he gave a statement to the police on May 21, 2001.

On cross-examination, the defendant said he had known Gillard for about six years. He said his statement to the police on May 21, 2001, was incorrect because he did not go to his mother's house to retrieve his gun after leaving the convenience store. He said the statement was incorrect because he did not remember what had happened at the time he gave the statement. He said he had his gun on him the entire day. He said that when the shooting took place, he was never closer than eight to ten feet from the victim. He said his entire statement to the police was incorrect.

# I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his attempted first degree murder conviction. Specifically, he argues there was no evidence that the defendant acted with premeditation or that he intended to kill the victim. The state claims the evidence is sufficient to establish premeditation. We agree with the state.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Any questions about the credibility of the witnesses were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Criminal attempt requires that one act "with the kind of culpability otherwise required for the offense . . . [and] with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." Tenn. Code Ann. § 39-12-101(a)(2). First degree murder is the unlawful, premeditated, and intentional killing of another. Tenn. Code Ann. § 39-13-201, -202(a)(1). Premeditation is defined as:

> an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Tenn. Code Ann. § 39-13-202(d). The element of premeditation is a question for the jury and may be established by proof of the circumstances surrounding the killing. Bland, 958 S.W.2d at 660. Our supreme court has delineated the following factors that demonstrate the existence of premeditation: the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, declarations by the defendant of an intent to kill, evidence of procurement of a weapon, preparations before the killing for concealment of the crime, and calmness immediately after the killing. Id.

The record in this case reveals sufficient evidence of premeditation to support the defendant's conviction for attempted first degree murder. Viewing the evidence in the light most favorable to the state, the proof shows that the defendant was upset with the victim because he believed the victim had testified against Marcus Gillard in court. The defendant told the victim at a convenience store that the victim was a "dead man walking" and that he was "already dead and don't know it yet."

-4-

Later that day, the defendant drove to his aunt's house and waited for the victim to get home. When the victim arrived, the defendant pulled out a gun and walked toward the victim. The victim grabbed the defendant's gun while the defendant attempted to shoot him. The victim then grabbed his own gun and shot the defendant in the chest. The victim ran from the defendant after he shot him, and the defendant attempted to shoot the victim while he was running away. Although the defendant argues his version of the events is correct, the credibility of the witnesses and the weight to be given to their testimony are issues to be resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). The jury chose to believe the testimony of other witnesses over that of the defendant, and that is its prerogative. Id. We conclude that a rational jury could have found beyond a reasonable doubt that the defendant acted with premeditation.

## II. SENTENCING

The defendant contends that the trial court imposed an excessive sentence. He argues that the trial court improperly applied enhancement factor (9), that the defendant possessed or employed a firearm. See Tenn. Code Ann. § 40-35-114(9) (Supp. 2001) (amended 2002).[1] In addition, he contends that the trial court erroneously refused to apply mitigating factor (2), that the defendant acted under strong provocation; factor (3), that substantial grounds existed tending to excuse or justify the defendant's criminal conduct; and factor (11), that the defendant committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. See Tenn. Code Ann. § 40-35-113(2), (3), (11). The state contends that the record supports the twenty-two-year sentence imposed by the trial court.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the
> final sentencing decision, identify the mitigating and enhancement

---

[1]The legislature's 2002 amendment to Tenn. Code Ann. § 40-35-114, effective July 4, 2002, added as the new enhancement factor (1) that the "offense was an act of terrorism" but changed the existing enhancement factors only by increasing their designating number by one. Thus, enhancement factor (9) as used in this opinion is presently factor (10).

factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The sentence to be imposed by the trial court for a Class A felony is presumptively the midpoint in the range when no enhancement or mitigating factors are present. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Id. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Id. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

At the sentencing hearing, the victim was the only witness to testify. He said that he and his family remain scared as a result of the shooting. He said the defendant should receive a fifteen to twenty-year sentence.

A presentence report was introduced into evidence at the sentencing hearing. It reflects that the then twenty-year-old defendant attended school through the eleventh grade. The defendant had no prior criminal record and no record of arrests as an adult. His juvenile record, however, included convictions for aggravated assault, attempted arson, criminal trespassing, vandalism, burglary, aggravated burglary, theft, attempted theft, domestic assault, and shoplifting. The defendant reported no physical or mental health problems and reported no alcohol or drug usage. The defendant reported working for AEMP Corporation until October 2000.

The trial court found two enhancement factors and no mitigating factors and sentenced the defendant to twenty-two years, two years above the presumptive midrange sentence of twenty years. Tenn. Code Ann. § 40-35-210(c). It applied enhancement factor (9), involving the defendant's use of a firearm during the commission of the crime. See Tenn. Code Ann. § 40-35-114(9) (Supp. 2001) (amended 2002). It applied enhancement factor (20) for the defendant's adjudication of committing aggravated assault and attempted arson as a juvenile, offenses that would have been felonies had the defendant been an adult. See id. § 40-35-114(20) (Supp. 2001) (amended 2002).

The defendant contends that enhancement factor (9) does not apply in this case because possession of a firearm is a necessary element of the offense for attempted first degree murder. In State v. Bradfield, 973 S.W.2d 937, 949 (Tenn. Crim. App. 1997), the court held that enhancement factor (9) was an appropriate factor to consider when the defendant uses a weapon while committing the offense of attempted first degree murder because use of a weapon is not an essential element of attempted first degree murder. Therefore, the trial court was correct in its application of factor (9) to enhance the defendant's sentence.

The defendant contends that the trial court should have applied mitigating factor (2), that the defendant acted under strong provocation, because the defendant responded to the victim, who he claims initiated the altercation. See Tenn. Code Ann. § 40-35-113(2). However, the trial court obviously took the same view of the evidence as the jury did. The evidence shows that the defendant initiated the altercation because he was upset with the victim for testifying against his friend, Gillard. The victim testified that the defendant was waiting for him when he arrived home and that the defendant pulled out a gun first during the altercation. The trial court and the jury did not accredit the defendant's claim that the victim initiated the confrontation. Based on the testimony at trial, we do not see the existence of provocation that would justify using this factor for mitigation.

The defendant contends that the trial court should have applied mitigating factor (3), that substantial grounds existed that excused or justified the defendant's criminal conduct. See Tenn. Code Ann. § 40-35-113(3). The trial court found that the defendant's conduct was not justified based on its review of the facts in the case and the record supports the trial court's conclusion. The evidence shows that the defendant had threatened the victim earlier in the day, drove to the victim's house with a gun, and attempted to shoot the victim as soon as the victim arrived. The defendant's being shot does not justify his shooting at the victim because the record reflects that the defendant attempted to shoot the victim first. The evidence does not show that mitigating factor (3) should apply.

The defendant contends that the trial court should have applied mitigating factor (11), that he committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. See Tenn. Code Ann. § 40-35-113(11). However, the proof at trial showed that the defendant testified he had been carrying a gun the entire day. The victim testified that the defendant had threatened to kill him earlier in the day and that the defendant approached him first at the victim's home and pulled out a gun. On the record before us, we cannot say that the defendant lacked a sustained intent to violate the law.

Given the two applicable enhancement factors and the absence of mitigating factors, the record supports the twenty-two-year sentence imposed by the trial court. Thus, the sentence is affirmed.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, JUDGE